Argued and submitted February 17, affirmed July 8, 1982

STATE OF OREGON,
*Respondent,*
*v.*
RONALD JAMES SHANKLE,
*Appellant.*

(No. 81-07867, CA A22257)

647 P2d 959

Robert N. Peters, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for appellant.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was convicted of misdemeanor driving while suspended. ORS 487.560. On appeal he contends that the trial court should have granted his motion to suppress evidence, because the stop of his vehicle by police officers was unreasonable under the state and federal constitutions. We affirm.

Defendant was driving his vehicle on a, public highway when he was stopped by two police officers who were conducting an operator's license and vehicle registration inspection. Defendant was not suspected of having committed a crime or traffic infraction. The sole reason for the stop was that defendant's vehicle happened to be the next vehicle approaching the check point set up by the officers. The officers conducted the inspection in accordance with provisions of the Oregon State Police Policy Manual, which requires officers "from time to time [to] conduct on-site inspections to determine the status of motorists' operator's license and vehicle registration." The officers had selected a stretch of highway affording ample off-pavement parking space and an unobstructed view from either direction for a considerable distance, as required by the policy manual. The manual also requires that a police patrol vehicle be parked off the roadway and be clearly visible to oncoming motorists.[1] Warning signs are not required by the policy manual, and none were used in this case. The officers stopped cars for inspection by means of hand signals. Prior to beginning the inspection, the officers decided on which one of three procedures listed in the policy manual for selecting vehicles for inspection they would use. The one used in this case is:

"3. The first passing vehicle will be stopped, with all other vehicles permitted to pass until the inspection is completed, at which time the very next vehicle must be stopped for inspection. This procedure is then repeated until the completion of the inspection."[2]

---

[1] Neither party's brief indicates whether this requirement was complied with but we presume it was, because defendant does not point out anything to the contrary.

[2] The other two procedures are to stop all passing vehicles or to stop vehicle at a designated interval such as every fifth vehicle or every tenth vehicle.

The two officers conducted inspections at the check point for about two hours. They inspected a total of 40 vehicles. In only one inspection—defendant's—did the officers find a license or registration violation.[3]

Defendant contends that this inspection procedure constitutes an unreasonable seizure under the Fourth Amendment of the federal Constitution and Article I, section 9 of the Oregon Constitution.[4] In determining whether the seizure was reasonable, we apply the balancing test expressed in *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), which in turn was based on *Delaware v. Prouse,* 440 US 648, 99 S Ct 1391, 59 L Ed 2d 660 (1979). The court stated in *Tourtillott:*

"The test is easily articulated. In determining the constitutionality of a particular government procedure, the promotion of the legitimate government interest at stake is balanced against the individual's right to have his or her privacy and personal security be free from arbitrary and oppressive interference. The Court has considered the following factors to be important:

"(1) the importance of the governmental interest at stake;

"(2) the psychologically and physically intrusive nature of the procedure;

"(3) the efficiency of the procedure in reaching its desired goals; and

"(4) the degree of discretion the procedure vests in the individual officers.

"No one factor is held to be determinative. As with any balancing test, its application to a particular set of facts may prove to be difficult." 289 Or at 864-65.

In *Prouse* the Supreme Court found that the manner in which the police stopped a vehicle on a public highway for the purpose of checking the driver's operator's

---

[3] The officers also conducted a voluntary vehicle safety inspection for motorists already stopped for the license and registration inspection. This inspection resulted four warnings and one citation for defective equipment.

[4] Both constitutional provisions "impose limitations on search and seizure 'in der to prevent arbitrary and oppressive interference by enforcement officials with e privacy and personal security of individuals.'" *State v. Tourtillott,* 289 Or 845, 3, 618 P2d 423 (1980) (quoting *United States v. Martinez-Fuerte,* 428 US 543, 4, 96 S Ct 3074, 49 L Ed 2d 1116 (1976)).

license and vehicle registration was unreasonable under the Fourth Amendment. The Court held that this discretionary spot check by a roving patrol was unreasonable but that

"* * * [t]his holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers. * * *" (Footnote omitted.) 440 US at 663.

Defendant contends that the procedure used in this case is unreasonable because of the intrusive nature of the stop, the inefficiency of the procedure and the degree of discretion vested in the police officers. He argues that a full roadblock at which all vehicles are stopped, as suggested by the Court in *Prouse,* is proper, but that the limited roadblock used in this case is not. We hold that the limited roadblock used here is constitutionally permissible.

First, the procedures to be applied by the police officers were explicitly set out in their policy manual. The details of the inspection method were planned and systematic, and the exercise of the officers' discretion was minimized. The officers did not select vehicles on the basis of hunches, which was the primary evil of the random spot check method condemned in *Prouse.* Here, defendant's vehicle was stopped because it was "the very next vehicle" approaching the officers' limited roadblock.

Second, although the method used was not as efficient as a full roadblock might have been, the method nonetheless did cause a systematically-determined sample of passing vehicles to be stopped for inspection. The fact that the limited roadblock revealed one license violation among the 40 vehicles stopped is insignificant. The limited roadblock is more efficient than random spot checks and because it is systematic, stationary and visible from approaching vehicles, may serve as a greater deterrent to license and registration violations than random spot check by a roving patrol.

Finally, the nature of the intrusion involved is minimal and has none of the evils associated with a random stop. Motorists can see the roadblock as they approach and are less likely to be frightened or annoyed by this intrusion than by a random stop. Although under this method only one driver is stopped even if several are approaching the roadblock, the one singled out is immediately told by the officer the purpose of the stop as required by the police policy manual. Only one vehicle is stopped at a time, and it is detained for as short a time as possible. Defendant argues that the use of warning signs would have helped to allay the fear of unrestrained police activity on the part of the driver selected for inspection. That may be true, but it is only one factor in the consideration of the intrusive nature of the stop.

These factors, plus the undisputed importance of the government's interest in highway safety, convince us, on balance, that the limited roadblock used in this case was not constitutionally unreasonable. The stop was proper, and the court correctly denied defendant's motion to suppress.

Affirmed.