THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
HERBERT F. LUST, Defendant-Appellee.

Fourth District   No. 4—83—0330

Opinion filed November 21, 1983.

510

Chris E. Freese, State's Attorney, of Sullivan (Robert J. Biderman and Thomas W. Lacy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert J. Waaler, of Waaler, Evans & Gordon, of Champaign, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The defendant, Herbert Lust, was stopped by two Illinois State troopers who were conducting a safety check on second division vehicles traveling on Illinois Route 133 at Illinois Route 32 near Lovington, Illinois. Defendant was required to stop in spite of his apparent compliance with traffic rules. He was subsequently issued a traffic citation for driving while his license was revoked in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—303). Defendant filed a motion to suppress all evidence arising from his arrest. At a hearing on April 28, 1983, the trial court granted this motion. The People appeal this ruling pursuant to Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)).

On December 16, 1982, Illinois State Troopers Parr and McClarin established a "safety check" for second division vehicles traveling on Illinois Route 133. A second division vehicle is defined by section 1—217 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 1—217) as follows:

"Those vehicles which are designed for carrying more than 10

persons, those designed or used for living quarters and those vehicles which are designed for pulling or carrying property, freight or cargo ***"

Defendant was driving such a vehicle as he approached the site of the safety check. He was not observably violating any traffic laws. He was summoned to the side of the road by a trooper standing in the middle of the road. A safety check was then conducted.

Trooper Parr testified that the Illinois Department of Law Enforcement, Division of Illinois State Police, required that each district make safety checks on a monthly basis. It was left to the troopers to decide exactly where and when these checks would occur and the length of time that they would last.

On December 16, 1982, Trooper Parr selected the site of the operation, and he and Trooper McClarin commenced the safety checks at 8:30 a.m. The troopers intended to stop every truck. However, if traffic volume were heavy, some trucks were allowed to pass by uninspected in order to avoid traffic congestion and long waiting periods for the truck drivers. Therefore, the only vehicles that may have avoided the safety check were those that passed by when the troopers were busy with other trucks. The same inspection was performed on all of the vehicles that were stopped.

The defendant's truck was stopped at 9:50 a.m. He was subsequently given a citation for driving while his license was revoked. The defendant filed a motion to suppress all evidence arising from his arrest, alleging that the stop violated the fourth and fourteenth amendments to the United States Constitution by leaving too much discretion in the stopping officers. He based his claim on the U.S. Supreme Court decision in *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391. In allowing the defendant's motion to suppress, the hearing judge stated:

"I think there is too much discretion in the officers here when they can decide 'Well, we have got too many stacked, we are going to let a few go and we will start stopping again.' "

On May 3, 1983, the People filed a timely notice of appeal together with a certificate of impairment.

■■ The United States Supreme Court, in passing upon the constitutionality of various types of vehicle stops, has established some general guidelines. The permissibility of a vehicle stop is to be judged "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (*Delaware v. Prouse* (1979), 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396.) The court has distinguished checkpoint or

roadblock-type stops, which are generally permissible, from roving patrols or spot checks which are generally unreasonable and too intrusive upon privacy interests. *Prouse*; *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.

In the present case, we must balance the intrusion of the safety check upon the driver's fourth amendment interests against the legitimate State interest in highway safety. The Supreme Court has provided some guidance in its holding in *Prouse*. There the court held that the governmental interest in highway safety cannot justify random spot checks on motorists. This type of stop is too intrusive upon individual privacy and this outweighs its beneficial impact on highway safety. However, the court viewed checkpoint stops in a different light. The intrusiveness of such a stop is felt to be appreciably less than that of a roving patrol spot check. (*Prouse*; *Martinez-Fuerte*.) Moreover, the court stated that highway safety could be promoted by "developing methods for spot checks that involve less intrusion [than random stops] or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74, 99 S. Ct. 1391, 1401.

██ One reason the Supreme Court felt that the intrusiveness of a checkpoint stop is less than that of a purely random stop is that motorists are less likely to be alarmed by a checkpoint stop. (*Prouse*; *Martinez-Fuerte*.) In the instant case, the stop involved has the characteristics of a roadblock-type stop. Drivers of the vehicles that were stopped were not randomly selected; rather, they were stopped at a fixed location along with other operators of second division vehicles. Embarrassment, fright and surprise were kept to a minimum. The degree of intrusion involved here was equivalent to that of a checkpoint stop.

Similarly, the amount of discretion left to the stopping officers here is not like the "unconstrained" discretion that is left to officers who make random spot checks. Trooper Parr testified that they intended and tried to stop all of the second division vehicles that passed their checkpoint. No discretion is involved to that extent. Only when the volume of truck traffic became too great would other second division vehicles be allowed to pass by uninspected. In other words, when the troopers became too busy they could not stop every truck. A nearly identical situation was faced by the court in *People v. Estrada* (1979), 68 Ill. App. 3d 272, 274, 386 N.E.2d 128, 130, *cert. denied* (1979), 444 U.S. 968, 62 L. Ed. 2d 382, 100 S. Ct. 459, where it stated:

"It is not clear from the record whether the traffic was light enough for the troopers to stop every car passing their checkpoint or whether some cars passed while the troopers were both occupied, but it is irrelevant whichever was the case. It is not necessary for a checkpoint to stop every car in order to be systematic but only for officers to be following some pattern that will minimize their discretion in chosing (*sic*) whether to stop a particular auto."

Here, too, the troopers' discretion was kept to a minimum. Manpower limitations and the physical conditions of the State highways dictate that State troopers will be unable to stop every vehicle in some instances. While the officers may have had the discretion to decide where the checkpoint would be set up, the length of time to operate the checkpoint, and when and if the traffic had become too great to check each vehicle, this is not the type of discretion that is offensive to the fourth amendment. These are all neutral, objective decisions on their face. Where objective standards are set forth, as here, we will presume that they are being followed. There is always the possibility that objective, neutral standards will be subject to abuse by enforcement officials and this can be brought to the attention of the courts when and if it occurs. No such abuse is alleged here.

■ Moreover, we are not dealing with a case where the troopers had "unconstrained" or "unbridled" discretion to decide whether or not to stop an individual vehicle based on the subjective feelings of the officer. Given the limitations of law enforcement on our State highways, discretion, here, was kept to a minimum.

■ We feel that the important State interest in the safe highway operation of second division vehicles outweighs the minimal intrusion upon fourth amendment privacy interests caused by this safety check stop. Accordingly, the order of the circuit court of Moultrie County granting the motion to suppress is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

MILLS and MILLER, JJ., concur.