[No. 49875–0.   En Banc.   November 15, 1984.]

MICHEAL J. GUFFEY, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Frederick O. Frohmader,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Virginia Binns, Assistant,* for respondents.

BRACHTENBACH, J.—Plaintiffs, Micheal J. Guffey and Sandra L. Guffey, husband and wife, appeal the trial court's dismissal of their lawsuit at the close of plaintiffs' case. We affirm.

Plaintiffs sued the State, the State Patrol and an individual State Patrol Trooper. Their original claim was based on the tort of outrage. Later it was amended to include assault, false arrest and false imprisonment.

The claims were based upon the stopping of plaintiffs' vehicle for a statutorily authorized inspection of driver's license, vehicle registration and equipment. Two troopers, one of whom was defendant Lopez, set up a "spot check" operation on a road in Pierce County. The troopers would stop only as many vehicles as they could check at any one time. When inspections were completed for stopped vehicles and their drivers, the troopers would stop the next approaching vehicles. This was done in daylight with marked patrol cars parked on the shoulder of the road.

Plaintiffs' vehicle became the "next one in line" and was stopped. Trooper Lopez explained to the driver, plaintiff husband, the purpose of the stop and requested his driver's license and vehicle registration. The driver's license was expired. Trooper Lopez went to his patrol car, parked to the front of plaintiffs' vehicle, to write a citation and run a radio check on plaintiff, Micheal J. Guffey. The driver's license described a 6–foot white male, blue eyes, brown hair, weight 180 pounds, date of birth April 7, 1952, in the name of *Micheal* Jack Guffey. The Tacoma patrol radio office immediately advised that there was a Pierce County felony warrant outstanding with $50,000 bail, for *Marvin* J. Guffey, date of birth February 25, 1951, with the *exact* same physical characteristics listed on the driver's license produced by plaintiff husband.

Based upon his training and experience Trooper Lopez concluded that the driver might be the wanted felon. He approached plaintiffs' vehicle, drew his revolver, pointed it at plaintiff husband and ordered him out of the vehicle. Once plaintiff husband complied, the trooper reholstered his revolver and conducted a pat–down search, which revealed no weapons. Inquiry to plaintiff husband revealed that the warrant was for his brother. After plaintiff wife confirmed this explanation, the trooper allowed plaintiffs to leave.

The trial court ruled: (1) that there was no proof of the tort of outrage; (2) that there was proof of assault and false imprisonment unless the trooper's actions were privileged; (3) that the applicable statutes were unconstitutional; (4) that the trooper's actions were reasonable and in good faith reliance upon the statutes and State Patrol procedures; and (5) that the State had immunity in the exercise of discretionary authority.

■ First, did the trial court err in dismissing the claim based on the tort of outrage? No. The elements are set out in *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Italics omitted.) *Grimsby*, at 59, citing Restatement (Second) of Torts § 46 (1965). We agree with the trial court that these facts do not "come anywhere near" the elements outlined in *Grimsby*. The trooper was performing his duties pursuant to statute and did so in a reasonable manner under the circumstances. While plaintiffs assign error to taking this issue from the jury, they present no argument; indeed, they do not even cite *Grimsby*. There was no error in dismissing this claim.

Second, are spot checks of the nature employed here constitutional? The response to this question determines the validity of the initial stop and bears on the lawfulness of the trooper's subsequent conduct.

Spot checks are authorized by RCW 46.64.060 and .070 which provide:

The purpose of RCW 46.64.060 and 46.64.070 is to provide for the exercise of the police power of this state to protect the health and safety of its citizens by assuring that only qualified drivers and vehicles which meet minimum equipment standards shall operate upon the highways of this state.

RCW 46.64.060.

To carry out the purpose of RCW 46.64.060 and 46.64-.070, officers of the Washington state patrol are hereby empowered during daylight hours and while using plainly marked state patrol vehicles to require the driver of any motor vehicle being operated on any highway of this state to stop and display his or her driver's license and/or to submit the motor vehicle being driven by such person to an inspection and test to ascertain whether such vehicle complies with the minimum equipment requirements prescribed by chapter 46.37 RCW, as now or hereafter amended. No criminal citation shall be issued for a period of ten days after giving a warning ticket pointing out the defect.

RCW 46.64.070 in part.

Plaintiffs' constitutional challenge is based on *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). *Prouse* involved a purely random nighttime stop of a single vehicle at the complete discretion of the officer. After a lengthy analysis of what it considered applicable Fourth Amendment principles and precedent, the Court concluded:

Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. *This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve*

*the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock–type stops is one possible alternative.* We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

(Footnote omitted. Italics ours.) *Prouse,* at 663. On its face our statute appears to vest unconstrained discretion in the officer to stop any vehicle during daylight hours while using plainly marked patrol cars. The State argues that the discretion of the troopers is constrained in that the purpose of the stop is limited to checking the driver's license and checking statutorily prescribed equipment requirements. That is what the court found to be unreasonable in *Prouse.* The State's argument lacks merit. The statute itself poses serious constitutional questions under *Prouse.*

The State next contends that State Patrol procedures contain constitutionally adequate restraints to meet the requirements of *Prouse.* The difficulty is that there is no proof in this record as to what those procedures are. The trooper's conclusionary testimony is the only evidence that the stop was in accordance with State Patrol procedures. The procedures, presumably in writing, were not in evidence. We do not know when they were adopted, by whom, under what authority or what they contain. The issue of whether a police agency can adopt administrative procedures to meet constitutional standards is not raised or briefed. There is no public filing, such as in the Washington Administrative Code, as to methods of adoption, implementation or modification of such procedures. There is no evidence of who decides to implement spot checks or of the required neutral criteria governing selection and conduct of checks. Constitutional requirements cannot be met by such inadequate proof.

Given the deficiency in this record, we cannot and do not pass upon the constitutional issue, particularly since this case can be determined on an alternative nonconstitutional ground. We turn instead to the issue of whether the state

trooper is protected by a qualified immunity from liability for false arrest, false imprisonment and assault.

The trial court ruled that there was proof of false imprisonment, and assault, unless the trooper's actions were privileged. In *Bender v. Seattle*, 99 Wn.2d 582, 591, 664 P.2d 492 (1983) we stated "[t]he gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority . . .". An assault occurs when there is an attempt to unlawfully use force or inflict bodily injury on another, accompanied by the apparent present ability to give effect to the attempt if not prevented. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942); *Coleman v. Department of Empl. Sec.*, 25 Wn. App. 405, 607 P.2d 1231 (1980). An assault also occurs when there is an illegal arrest. *State v. Rousseau*, 40 Wn.2d 92, 95, 241 P.2d 447 (1952).

In determining the liability of the trooper under each of the claims set forth above, we initially examine the evolution in Washington of a qualified immunity for officers in various circumstances. Secondly, we establish an additional narrow immunity defense under specified conditions. Finally, we determine whether the trooper in the present case should be protected by this immunity.

Washington and numerous other states have recognized a qualified immunity for officers in various circumstances. *See Conkey v. State*, 74 A.D.2d 998, 427 N.Y.S.2d 330 (1980); *Dugger v. Off 2nd, Inc.*, 612 S.W.2d 756 (Ky. Ct. App. 1980); *Sanchez v. Garza*, 581 S.W.2d 258 (Tex. Civ. App. 1979); *Robinson v. San Francisco*, 41 Cal. App. 3d 334, 116 Cal. Rptr. 125 (1974); *Pallett v. Thompkins*, 10 Wn.2d 697, 118 P.2d 190 (1941). A review of the circumstances under which such qualified immunity has been found thus far in Washington is essential to an understanding of the qualified immunity established today.

The court first established an immunity against liability for false arrest and imprisonment in *Pallett v. Thompkins, supra*, and *Cavitt v. McCrite*, 194 Wash. 684, 79 P.2d 637

(1938). In *Pallett* an individual, who was arrested pursuant to a warrant and subsequently acquitted, sought damages for false imprisonment from the arresting officer. The court held that as long as the warrant is facially valid, the officer is not liable in an action for false arrest. The court in *Cavitt* found the same immunity in cases where the officer makes an arrest under a facially valid warrant or process even though there are facts within his knowledge which would render it void as a matter of law. Recently, however, this court restricted immunity obtained from a facially valid warrant to cases in which the arresting officer did not provide the information used to obtain the warrant. *Bender v. Seattle, supra.*

The court next addressed the extent of immunity in cases in which an arrest was made without a warrant. In *Sennett v. Zimmerman,* 50 Wn.2d 649, 651, 314 P.2d 414 (1957), the court held that an officer who makes an arrest without a warrant is immune from liability if he has reasonable cause to believe that a crime is being committed in his presence and he acts in good faith on that belief. Presence during commission of the crime is not required when the peace officer reasonably believes that the arrested party committed a felony. *Plancich v. Williamson,* 57 Wn.2d 367, 357 P.2d 693, 92 A.L.R.2d 559 (1960). Only where there is an abuse of the authority to arrest without a warrant may an arresting officer be liable for damages for false arrest and imprisonment. *Plancich,* at 369.

Next, immunity from liability under 42 U.S.C. § 1983 (1871) was provided for in cases in which the official held a good faith belief that his conduct was constitutional and such belief was reasonable. *Hocker v. Woody,* 95 Wn.2d 822, 631 P.2d 372 (1981). Although it was stipulated that the present action was not a 42 U.S.C. § 1983 action, *Hocker* is important to the present case in that it stands for this court's adoption of the rationale and holding of *Pierson v. Ray,* 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967) from which it is derived. The United States Supreme Court in *Pierson* recognized the immunity as applicable in

common law actions for false imprisonment and arrest as well as in 42 U.S.C. § 1983 actions. *Pierson,* at 555. Restatement (Second) of Torts § 121, comment *g* (1965) sets forth the rationale:

> The additional privilege is given because the peace officer has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes.

The immunity in common law and 42 U.S.C. § 1983 actions established in *Pierson* is particularly relevant to the present case because the Court applied the immunity to a factual situation in which the statute under which the appellants were arrested was subsequently declared unconstitutional. As in the present case, the plaintiffs sought damages for false arrest and false imprisonment. In *Pierson,* the officers were protected by a good faith and reasonable belief that their conduct was constitutional.

Finally, relying on *Pierson* and *Hocker,* the Court of Appeals found an immunity from liability in an action for common law false arrest when the statutes upon which they relied for the arrest were declared unconstitutional. *Daniel v. State,* 36 Wn. App. 59, 671 P.2d 802 (1983). In *Daniel,* Mr. Daniel was arrested for noncompliance with RCW 9A.76.020(1) and (2), the stop and identify statute. This statute was found to be unconstitutionally void for vagueness in *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982), 4 years after Mr. Daniel's arrest and some time after his trial. As in *Pierson,* the Court of Appeals held that because the officers were acting in good faith on a reasonable belief that a crime had been committed they were protected by a qualified immunity with regard to their enforcement of RCW 9A.76.020.

We turn now to the immunity available in an action for false imprisonment and arrest for an arrest made pursuant to a statute, the unconstitutionality of which is asserted but

not judicially determined. Other courts have protected officers who act in good faith in their understanding of the law at the time of the arrest. The Rhode Island Supreme Court in *Descoteaux v. Bonaventura,* 115 R.I. 555, 350 A.2d 396 (1976) held that an officer would not be held liable for false arrest for an arrest made pursuant to an assertedly unconstitutional "peeping Tom" statute, since the officer was entitled to rely upon the presumptive validity of the statute. The United States District Court in Utah held that the sheriff, who had no knowledge or notice of the claimed invalidity of the statutes under which complaints were filed, could not be held liable for false arrest when the prosecution was instituted in good faith. *Anderson v. Reynolds,* 342 F. Supp. 101 (D. Utah 1972), *aff'd,* 476 F.2d 665 (10th Cir. 1973).

■ Extending the rationales set forth by *Pierson, Daniel* and the other courts cited above, we recognize a qualified immunity for an officer who makes an arrest pursuant to an allegedly unconstitutional statute. We hold that an officer has a qualified immunity from liability for false arrest and imprisonment when the officer (1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably.

In the present case, the trooper was acting pursuant to RCW 46.64.060 and .070 and procedures dictated to him by the State Patrol. The trooper had no knowledge or notice of any claimed invalidity of the statutes and, therefore, his reliance on the authority of the statutes was reasonable.

■ The trooper's actions in dealing with the plaintiff husband were reasonable. His training and experience and the circumstances of this stop indicated that he was possibly dealing with an armed and dangerous felon. Not only did Micheal Guffey match the description on the outstanding warrant, but the names on the warrant and on the driver's license were nearly identical. We recently held that an arrest must be based on more than the person's matching the intended arrestee's general physical description set forth in the warrant. *State v. Smith,* 102 Wn.2d 449, 688

P.2d 146 (1984). In the present case, as in *Sanders v. United States,* 339 A.2d 373 (D.C. 1975), the arrest was based on reasonable articulable grounds to believe that the suspect was the intended arrestee where the names were nearly identical and the descriptions were identical. Therefore, his defensive posture was also reasonable. We hold that Trooper Lopez is immune from liability for false arrest, false imprisonment and assault.

■ The trooper is not liable on any of the asserted claims. In *Nyman v. MacRae Bros. Constr. Co.,* 69 Wn.2d 285, 287, 418 P.2d 253 (1966), citing Restatement (Second) of Agency § 217B(2) (1958) and Restatement (Second) of Torts § 883, comment *b,* illustration 4 (1939), we held that there can be no liability as a master unless the servant is liable. Therefore, under the theory of respondeat superior, the only theory asserted in trial, the State and State Patrol cannot be held liable. We, therefore, do not reach the question of the State's immunity in the exercise of discretionary authority, which was one ground relied upon by the trial court.

Affirmed.

WILLIAMS, C.J., and ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.