[No. 50754–6.   En Banc.   September 12, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY
WAYNE MARCHAND, *Petitioner.*

*Richard C. Fitterer,* for petitioner.

*Paul Klasen, Prosecuting Attorney,* for respondent.

*Jeffrey I. Tilden* on behalf of the American Civil Liberties Union, amicus curiae for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Chip Holcomb* and *Amanda L. Frantz, Assistants,* amici curiae for respondent.

BRACHTENBACH, J.—Defendant was convicted of unlawful possession of marijuana in excess of 40 grams and unlawful possession of cocaine. The Court of Appeals affirmed the cocaine conviction, but reversed the marijuana conviction. *State v. Marchand,* 37 Wn. App. 741, 684 P.2d 1306 (1984). Defendant petitioned for review of the affirmance of the cocaine conviction. The State did not cross–petition as to the reversal of the marijuana conviction so that issue is not before us.

The essential question is whether it is constitutionally permissible to stop a vehicle for the purpose of checking the driver's license, auto registration and equipment.

First, we set forth the facts. At 1 in the afternoon, two Washington State Patrol troopers in separate vehicles decided to set up a "spot check" for driver's licenses, vehicle registration and equipment. One of the troopers, Trooper Richmond, created the "spot check" by placing a single traffic cone in the divider area of a 4–lane highway. At this point in the highway one vehicle was stopped by each trooper and the driver's license, registration and equipment were checked. After a vehicle was released, the next vehicle to approach was stopped. During the inspection of a given vehicle, other traffic was allowed to pass.

Four vehicles were stopped, inspected, and released under this procedure. Defendant's vehicle was then stopped by Trooper Richmond while the other trooper was checking another vehicle. Trooper Richmond explained to the defendant the purpose of the stop and requested his driver's license and registration, which defendant produced.

The trooper then conducted a test of the horn, lights and turn signals. To do that he necessarily walked around the automobile. Noticing a turn signal out, he went to the passenger side of the car and advised the defendant of the defective turn signal and of his failure to sign his registration. While at the passenger window, the trooper observed in an open ashtray an alligator or roach clip attached to a hand–rolled cigarette.

Based upon his training and experience, the trooper concluded that the object was a marijuana cigarette. The trooper asked defendant to get out of his car and then searched him. The defendant was wearing cowboy boots which contained baggies of marijuana and what defendant admitted was cocaine. The *Miranda* rights were given, the defendant was placed under arrest and the two troopers searched the passenger compartment and trunk. In the trunk was a closed, but unzipped suitcase containing about 508 grams of marijuana.

Second, we set forth the law. If the "spot check" stop is held invalid, the fruits of the stop, the cocaine, must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). A determination of the constitutional validity of the stop necessitates an analysis of the interrelationship of the fourth amendment to the United States Constitution, article 1, section 7 of the Washington State Constitution, state statutes and a written procedural policy of the Washington State Patrol.

The confusion in this area of law is caused, at least in part, by the United States Supreme Court's Fourth Amendment analysis in *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). In that case a Delaware policeman had stopped Prouse's vehicle to check his driver's license and automobile registration. The policeman had observed neither traffic or equipment violations nor any suspicious activity prior to the stop. During the stop, marijuana, which was in plain view on the floor of the car, was seized. Prouse was subsequently arrested for illegal

possession of a controlled substance. In affirming the suppression of the marijuana, the Court held

> that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Prouse,* 440 U.S. at 663.

In reaching this holding, the Court first determined that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments [Fourth and Fourteenth], even though the purpose of the stop is limited and the resulting detention quite brief." *Prouse,* 440 U.S. at 653. The Court then stated that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Prouse,* 440 U.S. at 654. When undertaking this balancing task "[t]he question remains, however, whether in the service of these important ends [highway safety] the discretionary spot check is a sufficiently productive mechanism to justify the intrusion upon Fourth Amendment interests which such stops entail." *Prouse,* 440 U.S. at 659. On the record before it, the *Prouse* Court answered that question in the negative.

Likewise, we must answer in the negative. There is nothing in this record that indicates that the spot check is a sufficiently productive mechanism to justify the intrusion. The assertion that the practice contributes to highway safety is completely unsupported.

The State concedes that the stop in the instant case was made without reasonable suspicion or probable cause. The *holding* of *Prouse* specifically precludes the practice employed here and the matter would seem to be ended. However, the Court, in *dicta,* went on to state that "[t]his

holding does not preclude . . . [the states] from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning . . . *all* oncoming traffic . . . is one . . . alternative." (Italics ours.) *Prouse,* 440 U.S. at 663.

From *Prouse,* therefore, we have a clear *holding* that this type of stop is invalid particularly because the efficiency of the "spot check" stop is not proven in the record. But, added to that we have confusing *dicta* that asks us to believe that the stopping of *all* traffic is somehow less intrusive to a particular motorist than the stopping of that motorist alone. The logic of this belief escapes us. The critical issue presented by the *Prouse* dicta, however, appears to be whether, under the Fourth Amendment or Const. art. 1, § 7, the exercise of discretion by law enforcement officials has been sufficiently constrained. We draw this conclusion from the rationale of *Prouse*: "Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed." *Prouse,* 440 U.S. at 662–63.

■ Thus, for Fourth Amendment analysis we conclude that *Prouse* requires us to focus upon the question whether there is unconstrained or unfettered discretion vested in the Washington State Patrol in carrying out safety checks. To answer this question we pose two additional questions: Under what authority does the Washington State Patrol stop motorists for driver's license and vehicle checks? Does that authority meet the criterion, as confusing as it is, of *Prouse*?

RCW 46.64.060 and 46.64.070 are relied upon by the State as authority for the driver and vehicle "spot checks." RCW 46.64.060 provides:

The purpose of RCW 46.64.060 and 46.64.070 is to provide for the exercise of the police power of this state to protect the health and safety of its citizens by assuring

that only qualified drivers and vehicles which meet minimum equipment standards shall operate upon the highways of this state.

RCW 46.64.070 provides, in pertinent part:

To carry out the purpose of RCW 46.64.060 and 46.64-.070, officers of the Washington state patrol are hereby empowered during daylight hours and while using plainly marked state patrol vehicles to require the driver of any motor vehicle being operated on any highway of this state to stop and display his or her driver's license and/or to submit the motor vehicle being driven by such person to an inspection and test to ascertain whether such vehicle complies with the minimum equipment requirements prescribed by chapter 46.37 RCW, as now or hereafter amended. No criminal citation shall be issued for a period of ten days after giving a warning ticket pointing out the defect.

It is clear that the statutes authorize any officer, without reasonable suspicion or probable cause, during daylight hours, in a plainly marked patrol car, to stop *any* motorist. As we noted in *Guffey v. State,* 103 Wn.2d 144, 148, 690 P.2d 1163 (1984), the statutes attempt to establish the very type of unconstrained authority condemned in *Prouse.*

There simply is no guidance as to why, how or when an officer can infringe upon the constitutional right of a motorist to use the public highways, free of intrusion of the government and free of detention for no known reason. Under this statute a citizen can be stopped for *any* reason satisfactory to a state patrol trooper. Although we do not assume that the Washington State Patrol does in fact engage in this type of discretionary stopping, there is nothing in the statute to prohibit such conduct.

We hold that these statutes impose no constraints on a state patrolman's discretion in making such stops and, thus, do not meet the dictates of *Prouse.*

The State and Washington State Patrol as amicus argue that the State Patrol's written procedures overcome any

constitutional defects in the statute. Those written procedures provide:

> For the purpose of this procedure, spot checks are defined as the stopping of motor vehicles by a highway roadblock for the purpose of inspecting vehicle licenses, driver's licenses, and vehicle equipment.
>
> Inspections will be in groups of vehicles without discrimination; however, in order to prevent unnecessary delay, no more vehicles should be stopped at any one time than can be effectively inspected by the available officers conducting the spot check. One officer may flag the vehicles over, inform the driver of the intention to inspect, and direct the operators to a waiting officer.
>
> Officers shall hold spot checks during daylight hours only, using plainly marked patrol cars. The location selected shall provide an adequate and safe place for drivers to stop their cars off the roadway.
>
> A Notice of Infraction will not be issued for defective equipment found at the scene of the spot check.
>
> Motorists will be advised to repair their vehicles immediately, however, correction notices will allow ten days before reinspections are required. Vehicles with dangerous defects may be prevented from further operation, impounded, or directed to a place for repair in accordance with RCW 46.32.060.

Washington State Patrol Memo A–24–78 Rev., issued Mar. 1, 1981.

These procedures *may* meet the criteria of *Prouse.* However, as we noted in *Guffey,* we doubt whether an internal directive of a law enforcement agency can overcome constitutional defects in a statute. From this record we do not know how these procedures were developed or adopted. They are not part of the Washington Administrative Code. One would assume, but we do not know, that they were promulgated without public hearings, that they are subject to change without notice, that they may be overridden by local supervising officers, and that individual officers may decide to implement them at any time or place without supervisory authority and without regard to the rights of

the motoring public except during daylight hours in marked cars.

It seems to us from this record that the State Patrol procedural policy offers exactly the kind of unconstrained and unfettered discretion that *Prouse* condemns. We believe that neither these procedures nor RCW 46.64.070 meet Fourth Amendment standards. Being bound by the *Prouse* standards, we need not reach Const. art. 1, § 7 arguments.

We reverse the conviction of the defendant for possession of cocaine.

UTTER, DORE, PEARSON, CALLOW, and GOODLOE, JJ., concur.

DURHAM, J. (dissenting)—The majority reverses a conviction for possession of cocaine on the grounds that the stop of the defendant's vehicle for a routine driver's license and vehicle registration check, which led to the discovery of the cocaine, was an unlawful seizure under the Fourth Amendment. I dissent. Routine safety checks are permissible under the Fourth Amendment where, as here, the method utilized for spot checks does not involve the unconstrained exercise of discretion. *Delaware v. Prouse,* 440 U.S. 648, 663, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979).

The majority is correct in stating that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Prouse,* at 654. However, in weighing these interests, the majority failed to take into account the minimal intrusion involved here. Unlike the roving patrols condemned in *United States v. Brignoni–Ponce,* 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975), the State Patrol procedures which implement RCW 46.64.070 allow only stationary roadblocks in the daylight hours utilizing marked patrol cars. Furthermore, the officer's discretion is

limited by procedures which require him to detain the very next car after completion of the check in progress. *Cf. Delaware v. Prouse, supra.* This type of checkpoint stop generates considerably less concern on the part of motorists than do roving patrols. *United States v. Martinez–Fuerte,* 428 U.S. 543, 558, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976).

Weighed against this minimal intrusion is the State's "vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles [and] that these vehicles are fit for safe operation". *Prouse,* at 658. Prevention of highway accidents through the timely discovery of safety risks such as worn tire tread or nonfunctioning brake lights is a legitimate state interest due deference by this court. While this interest could not justify arbitrary spot checks authorized at the whim of individual State Patrol officers, it is sufficient to authorize spot checks responsibly administered under predetermined neutral criteria such as that established here by the State Patrol. Numerous other courts have validated similar safety spot check procedures. *People v. Lust,* 119 Ill. App. 3d 509, 456 N.E.2d 980 (1983); *State v. Shankle,* 58 Or. App. 134, 647 P.2d 959 (1982); *United States v. Prichard,* 645 F.2d 854 (10th Cir. 1981), *cert. denied,* 454 U.S. 832 (1981); *Miller v. State,* 373 So. 2d 1004 (Miss. 1979). *Contra, State v. Olgaard,* 248 N.W.2d 392 (S.D. 1976).

Finally, I do not share the majority's reluctance to rely on agency procedures to circumscribe the agency's discretion under a statute. Agency procedures may of course be modified or ignored. However, we are not asked here, as we were in *Guffey v. State,* 103 Wn.2d 144, 148, 690 P.2d 1163 (1984), to approve an unspecified procedure for implementing RCW 46.64.070. Our consideration is limited to the legitimacy of spot checks performed under authorization of Washington State Patrol Memo A–24–78 Rev., issued Mar. 1, 1981. I would find such spot checks to be permissible under the Fourth Amendment. The time to review potential changes in this procedure is when/if they are actually implemented.

I would affirm the conviction, holding that the stop was permissible under the standards established in *Delaware v. Prouse, supra.*

DOLLIVER, C.J., and ANDERSEN, J., concur with DURHAM, J.