**James F. CHOCK, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. C1–89–2111.**

Court of Appeals of Minnesota.

July 31, 1990.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by WOZNIAK, Chief Judge, and FOLEY and HUSPENI, JJ.

## OPINION

WOZNIAK, Chief Judge.

Appellant's vehicle was stopped pursuant to a sobriety checkpoint roadblock. He was arrested for driving while under the influence, and his driver's license was revoked pursuant to the implied consent law. Appellant petitioned for judicial review, contending the stop was unconstitutional. The trial court sustained the revocation and James F. Chock appeals. We affirm.

## FACTS

In the late evening hours of August 18, 1989, officers were briefed as to the operation of a roadblock which was being conducted pursuant to the Anoka Traffic Accident Countermeasure program, and were given a copy of the plan. The roadblock monitored northbound traffic on State Highway 65 in the city of Blaine. The plan stated the roadblock would occur at 99th Avenue. An officer testified he believed it occurred at 109th Avenue, while the report summarizing the results also indicated it occurred at 99th Avenue.

Advance warning signs were posted approximately one-half mile south of the location. All traffic was funneled into a single lane. The plan originally called for officers to stop every seventh vehicle, but the supervisor changed it to every sixth vehicle. Police had no discretion as to which vehicle to pull over. After the stop, officers con-

ducted interviews. The average length of detention, not including arrested drivers, was 2.3 minutes.

The plan indicated the site was chosen because of the high number of alcohol-related accidents and arrests which have occurred there and because the roadblock could be safely implemented at that location. The roadblock used 18 officers, one supervising officer, and one community service officer. Of the 1,110 vehicles which passed through the checkpoint, 185 were stopped. Twelve preliminary breath tests were administered and eight citations were issued, four of which were DWI citations.

At approximately 1:23 a.m., Officer Todd Gleason stopped appellant's vehicle pursuant to the plan. Officer Gleason observed indicia of intoxication and arrested appellant for DWI. Gleason read him the implied consent advisory and offered him a breath test. Appellant refused, requesting instead a blood test.

Appellant's driver's license was revoked pursuant to the implied consent law for refusing testing, and he petitioned for judicial review. At the hearing, the major issue was the constitutionality of the stop pursuant to the roadblock. The trial court sustained the revocation and Chock appeals.

After oral argument before this court, decision on the appeal was stayed pending the release of relevant United States Supreme Court decisions. The decisions were released, and this court invited additional memoranda from the parties. The matter is now before the court for decision.

## ISSUE

Did the stop of appellant's vehicle pursuant to the roadblock, without individualized suspicion, violate appellant's fourth amendment rights?

## ANALYSIS

■ A fourth amendment seizure occurred when appellant's vehicle was stopped pursuant to the sobriety checkpoint roadblock. *Michigan Department of State Police v. Sitz,* —— U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *State v. Muzik,* 379 N.W.2d 599, 601 (Minn.App. 1985). In *Muzik,* this court concluded that a roadblock is constitutional if it is properly conducted. 379 N.W.2d at 601–02. We used the balancing test in *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979), and determined that under the facts the roadblock did not meet constitutional requisites. *Muzik,* 379 N.W.2d at 605. Appellant initially argued that under *Muzik,* the roadblock before the court was not constitutional. He concedes that under the Supreme Court's interpretation of federal law in *Sitz,* the roadblock is constitutional.

In *Sitz,* the United States Supreme Court addressed for the first time the constitutionality of seizures made pursuant to a sobriety checkpoint roadblock. In order to determine the reasonableness of the seizure, the Supreme Court also used the balancing test in *Brown,* but applied it in a somewhat different manner than this court did in *Muzik. Sitz,* —— U.S. at ——, 110 S.Ct. at 2487. In *Brown,* the Supreme Court stated:

[t]he reasonableness of seizures that are less intrusive than a traditional arrest * * * depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." * * * Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

*Id.,* 443 U.S. at 50–51, 99 S.Ct. at 2640 (citations omitted).

The Supreme Court in *Sitz* first addressed the gravity of public concerns served by the seizure. It recognized the magnitude of the drunk driving problem and the state's interest in eradicating it. In contrast, the Court found the measure of "objective" intrusion on motorists stopped briefly at sobriety checkpoints slight as measured by the duration of the seizure and the intensity of the investiga-

tion. The Supreme Court also determined that the "subjective" intrusion, the fear and surprise engendered in law-abiding citizens, was less intrusive than stops by a roving patrol. The checkpoints were selected pursuant to guidelines and uniformed police officers stopped every approaching vehicle. The Supreme Court rejected the lower court's conclusion that the subjective intrusion was unreasonable because the record failed to demonstrate whether motorists could make U-turns or turnoffs to avoid the stop. *Sitz*, —— U.S. at ——, 110 S.Ct. at 2486–2487.

Finally, the Court considered "the degree to which the seizure advanced the public interest." *Id.* at ——, 110 S.Ct. at 2483. The lower court had engaged in a searching examination of the effectiveness of the roadblock based upon empirical evidence, and concluded that the checkpoint failed the test and that this failure materially discounted the state's strong interest in the program. The Supreme Court held that this factor "was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger." *Id.* at ——, 110 S.Ct. at 2483. It noted that the case involved neither a complete absence of empirical data nor a challenge to random highway stops. In fact, the evidence showed approximately 1.5 percent of drivers who went through the checkpoint were arrested for alcohol impairment, and an expert witness had testified that, on the whole, sobriety checkpoints resulted in drunk driver arrests of approximately one percent of all motorists stopped. After balancing these three factors, the Court concluded that the state program was consistent with the fourth amendment. *Id.* at ——, 110 S.Ct. at 2487–2488.

Applying these factors to the present case, it is clear that the stop should be upheld. Minnesota has a compelling interest in battling the effects of drunk drivers, and the public interest served is great. *Muzik*, 379 N.W.2d at 602. We now reiterate our concern as stated in *Szczech v. Commissioner of Public Safety*, 343 N.W.2d 305, 306 (Minn.App.1984): "The

trail of broken lives, bodies, and property left by drunk drivers is a holocaust on our highways."

The roadblock here was conducted pursuant to guidelines, and the officers, who stopped every sixth vehicle, did not employ any discretion as to which ones to stop. The questioning, while lasting longer than the average delay of 25 seconds in *Sitz*, was an average of only 2.3 minutes. Finally, the law enforcement officials were entitled to choose to use roadblocks rather than stops based upon individualized suspicion on this particular night to address the problem of drunk driving. The percent of DWI citations issued as a result of the roadblock was 2.2 percent of all drivers stopped, a slightly higher rate than the 1.5 percent in the *Sitz* case. The roadblock in this case met the constitutional requirements as set out by the United States Supreme Court. The fourth amendment rights of the appellant were not violated when he was stopped pursuant to the roadblock.

Appellant contends that this court should hold on independent state grounds that individualized suspicion is required before a citizen may be seized. He also suggests that neutral limitations on police discretion should be imposed by legislative enactment, which could set general time, location, and standard of operation requirements for checkpoints, and could require advance warning to the public of possible locations of the roadblock. It is, of course, the legislature's decision as to whether it will enact legislation to set limits on roadblocks which police officials may choose to use to combat the drunk driving problem. At this time, we choose to follow the United States Supreme Court's decision in *Sitz* and uphold the stop of appellant pursuant to the roadblock.

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.