STATE of Minnesota, Respondent,

v.

Michael Lee LARSON, Appellant.

No. C8–91–1473.

Court of Appeals of Minnesota.

May 19, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James T. Reuter, Chisago County Atty., Jeffrey R. Edblad, Asst. County Atty., Center City, for respondent.

James H. Leviton, North Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

KALITOWSKI, Judge.

This appeal is from a judgment of conviction for driving after revocation. The trial court rejected appellant Michael Larson's challenge to the checkpoint stop. Larson stipulated to the facts under *State v. Loth-*

*enbach,* 296 N.W.2d 854, 857–58 (Minn. 1980), was found guilty by the court and sentenced.

## FACTS

Appellant Michael Larson was stopped on County Road 19 in Chisago County on March 25, 1991. Three state highway patrol officers were conducting a driver's license checkpoint at that location. The officers, a sergeant and two troopers, began the checkpoint at about 10 a.m. They parked their squad cars, with emergency lights flashing, on the side of the two-lane road.

Trooper Jacqueline Sticha testified that her sergeant had suggested they conduct the driver's license checkpoint that day. She testified that although she didn't know who picked the location, a location was chosen where traffic was slower, and cars could be pulled over with less danger. The troopers would pull over and check the "next clear vehicle that we could pull in without causing a traffic hazard."

Sticha testified the checkpoint was discussed in an informal station meeting. No administrative officers were involved in the decision. She did not know whether there were written guidelines for the checkpoints. She testified the checkpoint operation lasted about two hours, and that the stop of each car took less than two minutes if no violations were found.

The trial court denied Larson's motion to suppress the evidence of his license revocation and dismiss the charge. Larson stipulated to the state's case and waived his right to a jury trial, as suggested in *Lothenbach,* 296 N.W.2d at 857–58. He appeals from his judgment of conviction and sentence.

## ISSUE

Did the checkpoint satisfy the requirements of the Fourth Amendment?

## ANALYSIS

■ Larson argues, and the state agrees, that Larson was subjected to a Fourth Amendment "seizure" when his car was pulled over at the checkpoint. *See Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990) (sobriety checkpoint resulted in a seizure). Although such a seizure need not be based on articulable suspicion, it must be shown to be "reasonable" under a test balancing the public interest served by the checkpoint against the intrusion, both objective and subjective, on the individual. *Id.* at 447–53, 110 S.Ct. at 2484–86.

The Supreme Court has stated:

We agree that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed.

*Delaware v. Prouse,* 440 U.S. 648, 658, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979).

■ In balancing the public interest against the private intrusion the court must consider the length of the stop and the intensity of the investigation, and the subjective intrusion. *See Sitz,* 496 U.S. at 451–55, 110 S.Ct. at 2486–87.

■ Two of the factors courts have considered in determining the degree of intrusion are: (1) whether the checkpoint location was chosen by supervisory personnel rather than officers in the field; and (2) whether the officers in the field had specific instructions limiting their discretion in choosing vehicles to stop. *See State v. Muzik,* 379 N.W.2d 599, 603–04 (Minn.App. 1985); *see generally* 4 Wayne R. LaFave, *Search & Seizure* § 10.8(a), at 62–63 (2d ed. 1987) (discussing importance of supervisory guidance and limits on discretion).

■ Here, there was no evidence presented that the checkpoint was authorized, or the location selected, by an officer higher than Trooper Sticha's immediate field supervisor, a sergeant. Nor was there evidence of any limit on the field officers' discretion other than a "stop when safe" rule.

Checkpoint stops of vehicles should not be left to "the unbridled discretion of law enforcement officials." *Delaware v.*

*Prouse,* 440 U.S. at 661, 99 S.Ct. at 1400. A self-imposed "stop when safe" rule does not provide an adequate guarantee against the exercise of unbridled discretion. Professor LaFave states:

> What is needed are neutral selection criteria within a system which does not carry with it any significant chance of undetectable subterfuge.

4 W. LaFave, *Search & Seizure* § 10.8(a) at 63. A "stop when safe" rule is a pattern, but a pattern entirely subject to the judgment of the individual officer. It does not guarantee there is no "undetectable subterfuge."

The state relies on a North Dakota case, *State v. Wetzel,* 456 N.W.2d 115, 120 (N.D. 1990), which held that a "stop when safe" rule was sufficient to limit officer discretion. We disagree with this holding. In addition, *Wetzel* can be distinguished because the establishment of the checkpoint was a department requirement and the "stop when safe rule" was part of a written department policy governing checkpoints. *Id.* at 116.

Other courts have recognized the importance of having administrative supervision or specific written instructions to field officers. In *State v. Shankle,* 58 Or.App. 134, 647 P.2d 959, 961 (1982), the court approved a driver's license checkpoint with instructions to field officers to stop the "very next vehicle" explicitly set out in their policy manual. The court noted that this minimized field officer discretion. *Id.* The D.C. Circuit Court of Appeals, in approving a checkpoint, also has noted that the checkpoint was initiated by a supervisory official, and field officers had specific instructions on how to proceed. *United States v. McFayden,* 865 F.2d 1306, 1313 (D.C.Cir.1989).

The Supreme Court's most recent case on roadblocks and checkpoints, *Michigan Dept. of State Police v. Sitz,* does not reduce the importance of supervisory involvement and specific instructions to field officers. Both were present in that case. *Sitz,* 496 U.S. at 444–49, 110 S.Ct. at 2483–84 (describing establishment of guidelines).

In addition to the lack of evidence of administrative supervision or specific guidelines limiting discretion, the state failed to present any evidence of the effectiveness of the checkpoint. *See Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (court must balance "the degree to which the seizure advances the public interest"); *Delaware v. Prouse,* 440 U.S. at 659–60, 99 S.Ct. at 1399 (1979) (no empirical evidence that random driver's license checks were effective). Here, there was no testimony on how many driver's license or equipment violations were uncovered or other empirical data on the effectiveness of the checkpoint in advancing the public interest. *Cf. Chock v. Commissioner of Pub. Safety,* 458 N.W.2d 692, 694 (Minn.App.1990) (approving legality of sobriety checkpoint on which empirical data of effectiveness was presented).

## DECISION

The checkpoint at which appellant was stopped did not satisfy the requirements of the Fourth Amendment.

Reversed.