STATE of Minnesota, Appellant,

v.

Dennis Lee WOLD, Respondent.

No. C6–93–715.

Court of Appeals of Minnesota.

Oct. 19, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, William P. Dinan, Duluth City Atty., William A. Blodgett, Asst. City Atty., Duluth, for appellant.

Rodney G. Brodin, Larson, Huseby & Brodin, Ltd., Duluth, for respondent.

Considered and decided by SCHUMACHER, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

The state appeals from a pretrial order suppressing evidence of driving while intoxicated. The evidence was obtained following a stop at a sobriety checkpoint which the district court ruled was unconstitutional. We reverse.

## FACTS

Respondent Dennis Lee Wold was stopped at about 12:30 a.m. on June 28, 1992, at a sobriety checkpoint set up in Duluth by the State Highway Patrol and local law enforcement agencies. Wold agreed to take a preliminary breath test, which he failed. He

then was taken to the law enforcement center, where he agreed to take an Intoxilyzer test. The test result was .16 alcohol concentration.

Wold moved to suppress the breath test and other evidence of intoxication, arguing the stop of his vehicle at the checkpoint violated the Fourth Amendment. At the suppression hearing, the state called Trooper Michael Summers, the state patrol's district coordinator of sobriety checkpoints and motor vehicle inspections.

Summers testified the checkpoint was set up pursuant to a 1991 General Order issued by the chief of the state patrol. Summers testified that the checkpoint and its location were authorized by Captain Lane, a district supervisor. Signs were set out on the highway in front of the checkpoint location to warn motorists. The participating officers stopped all westbound vehicles and had no discretion as to what cars to stop.

The district court granted Wold's motion to suppress. The court found that the state patrol's criteria for locating checkpoints were overbroad, and that the location of this checkpoint did not serve its stated purpose of detecting those drivers who were under the influence and were driving to Wisconsin.

### ISSUE

Did the sobriety checkpoint meet constitutional standards?

### ANALYSIS

The state in a pretrial appeal must show clearly and unequivocally that the trial court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Webber*, 262 N.W.2d 157, 159 (Minn. 1977). In reviewing pretrial suppression rulings where the facts are not in dispute, this court "may independently review the facts and determine, as a matter of law, whether

the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

▆▆▆ A highway sobriety checkpoint may meet constitutional standards if its features sufficiently satisfy the state's interest in detecting drunken driving, and sufficiently minimize the intrusion on individual privacy. *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 448–52, 110 S.Ct. 2481, 2484–86, 110 L.Ed.2d 412 (1990). A number of factors are relevant to this analysis, including the effectiveness of the checkpoint, the limitations on the discretion of officers in the field, and the length of the delay (and other indicia of intrusiveness) for law-abiding motorists. *See Chock v. Commissioner of Pub. Safety*, 458 N.W.2d 692, 694 (Minn.App.1990); *see generally* 4 W. LaFave, *Search and Seizure* § 10.-8(d) (2d ed. 1987).

The issue raised by Wold concerns the selection of the checkpoint location.[1] It is undisputed that the officers operating the checkpoint were under the direction of supervisory personnel and had no discretion as to which vehicles to stop. *Cf. State v. Larson*, 485 N.W.2d 571, 572–73 (Minn.App.1992) ("stop when safe" rule left too much discretion to field officers). This court in *Larson* stated:

> Here, there was no evidence presented that the checkpoint was authorized, or the location selected, by an officer higher than Trooper Sticha's immediate field supervisor, a sergeant.

*Id.* at 572.

The checkpoint location here was selected by supervisory personnel. It was not left to the discretion of officers in the field. Wold's only challenge is to the criteria used by supervisory personnel in selecting the site and whether the site actually met those criteria.

The checkpoint selection here satisfied the concerns expressed by Professor LaFave:

> Quite clearly, the question of where and when a DWI roadblock is to be conducted

---

1. Wold has not presented any claim that the checkpoint violated the state constitutional prohibition against unreasonable searches and seizures. The recent opinion of this court applying a stricter state constitutional standard for checkpoints, therefore, does not apply here. *See Asch-* *er v. Commissioner of Pub. Safety*, 505 N.W.2d 362 (Minn.App.1993); *but see Gray v. Commissioner of Pub. Safety*, 505 N.W.2d 357 (Minn.App. 1993) (declining to apply stricter state constitutional standard.)

should not be left to officers in the field. Rather, what is needed is that these roadblocks be "established by [a] plan formulated or approved by executive-level officers of the law enforcement agencies involved" which contains "standards * * * with regard to time, place" and similar matters.

4 W. LaFave, *Search and Seizure* § 10.8(d), at 76 (2d ed. 1987) (citations omitted).

■ The district court found the state patrol's site-selection criteria were "overbroad," and that the rationale of checking Wisconsin-bound drivers "was not legally or logically related to the location of the checkpoint." This court must defer to the district court's factual findings regarding the Highway 23 location, unless clearly erroneous. *See Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985). How specific the criteria must be and whether this checkpoint was unconstitutionally selected, however, are questions of law that this court must review independently. *See State v. Othoudt*, 482 N.W.2d at 221.

The Supreme Court in *Sitz* commented only briefly on the question of site selection:

Here, checkpoints are selected pursuant to the guidelines, and uniformed police officers stop every approaching vehicle.

496 U.S. at 453, 110 S.Ct. at 2487. The Court's concern focused on the level at which checkpoint locations were selected, and on reducing the discretion of officers in the field. The language Wold cites from the *Sitz* opinion more closely scrutinizing site selection is found in the dissenting opinion. *Id.* at 464, n. 5, 110 S.Ct. at 2492–93, n. 5.

Cases decided before *Sitz* generally indicate a concern with the level at which site-selection decisions are made, not the merits of those selections themselves. *See Commonwealth v. Amaral*, 398 Mass. 98, 495 N.E.2d 276, 278 (1986) (administrative officers should determine roadblock locations, using "carefully established standards and neutral criteria"); *People v. Bartley*, 109 Ill.2d 273, 93 Ill.Dec. 347, 354, 486 N.E.2d 880, 887 (1985) (potential for arbitrary enforcement reduced when site is selected by supervisory-level personnel), *cert. denied*, 475 U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 608 (1986); *State ex rel Ekstrom v. Justice Court*, 136 Ariz. 1, 5, 663 P.2d 992, 996 (1983) (roadblocks found unconstitutional where set up at discretion of local highway patrolman).

■ The state patrol's 1991 General Order establishes two general criteria for checkpoint site selection:

1. The site selected for a sobriety checkpoint should have a high volume of traffic and be known to have a history of alcohol involved crashes and or a high incidence of driving while under the influence of alcohol or drugs. It is anticipated that the checkpoint will result in maximum detection and deterrence.

2. The site must be selected with the safety of the motorists and the officers as a paramount consideration.

These criteria limited the discretion of administrative-level officials in choosing the checkpoint location. Moreover, there was no discretion given to field officers as to site selection. The site selected here fully satisfied the second criterion regarding officer and motorist safety. We conclude that, although questions were raised as to the degree to which the site satisfied the first criterion, the scrutiny applied here to that factor exceeds that which is constitutionally required under *Sitz*.

The *Sitz* Court criticized "the searching examination of 'effectiveness' undertaken by the Michigan court." *Sitz*, 496 U.S. at 454, 110 S.Ct. at 2487. The Court explained that the degree of effectiveness of the checkpoint should be a decision largely left to "politically accountable officials." *Id.* at 453, 110 S.Ct. at 2487.

The state presented evidence concerning the number of vehicles stopped, the general characteristics of the checkpoint location, and its proximity to local bars. Although the traffic volume and the incidence of DWI in the area may not have been optimal, to invalidate the checkpoint on these grounds would be to second-guess law enforcement officials to a degree strongly discouraged in *Sitz*. We note that the criterion of high volume traffic must be considered in context. This criterion potentially conflicts with the officer

and motorist safety factor and with the goal of reducing officer discretion as to which cars to stop. Checkpoint officers could not stop all cars in high-traffic areas, at least not without an unacceptable delay for motorists or an unreasonable risk to safety. Such a high-volume checkpoint could leave room for the exercise of an unconstitutional degree of officer discretion. *Cf. State v. Larson,* 485 N.W.2d at 573 ("stop when safe" rule allows too much officer discretion).

The checkpoint at which Wold was stopped was selected at the appropriate level, using appropriate criteria. The checkpoint selection was not constitutionally invalid for apparently weighing safety concerns above the goal of "maximum detection and deterrence."

## DECISION

The sobriety checkpoint did not violate the Fourth Amendment. The stop of Wold's vehicle was constitutional.

**Reversed.**