April 19, 1999

No. 2--97--0773

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) No. 97--CF--307 

v. )

)

KEVEEN FULLWILEY, ) Honorable

) John R. Goshgarian,

Defendant-Appellant. ) Judge, Presiding.

___________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Keveen Fullwiley, was charged by information with unlawful possession of cannabis (720 ILCS 550/4(d) (West 1996)), unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 1996)), resisting a peace officer (720 ILCS 5/31-1 (West 1996)), and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)).  The charges arose from a February 2, 1997, roadblock safety check conducted by the Waukegan police department at the intersection of Butrick and Brookside in Waukegan.  Defendant now appeals the trial court's order denying his motion to suppress.  We reverse and remand.  

The facts relevant to the disposition of this appeal are as follows.  On April 4, 1997, defendant filed a motion to suppress.  
A hearing on the motion was held on April 9, 1997.  The hearing 
commenced with the testimony of Keith Zupeck, a police officer with the City of Waukegan.  Zupeck testified that on February 2, 1997, Sergeant Quinn, his supervisor, instructed him to conduct a roadblock safety check and to stop every fifth vehicle traveling in the northbound lanes at the intersection of Butrick and Brookside.  According to Zupeck, Sergeant Quinn selected the location and method of the roadblock.  The purpose of the roadblock was to check for valid license, insurance, and registration.
 Zupeck was on assignment with Officer DeBaufer.  Both officers wore uniforms and drove police vehicles.   

Zupeck testified that defendant was a passenger in a vehicle that he stopped at the roadblock at approximately 6:10 p.m.  Zupeck initially stopped the vehicle by himself.  When the vehicle was stopped, Zupeck observed that there were four occupants, three males and one female, in the vehicle.  After Zupeck advised the driver of the reason for the stop, the driver gave Zupeck an insurance card, but he did not have a driver's license.  Thereafter, Zupeck asked the occupants to step out of the vehicle "one at a time."  He asked them to exit the vehicle so that he could perform a "safety pat down."  He explained that the reason he felt that he needed to perform a "safety pat down" was because there were four people in the vehicle and he "couldn't keep [his] eyes on them at all times."  He wanted to pat them down for his own safety. 

Zupeck began the patdown with the driver of the vehicle.  After he performed the patdown of the driver, Zupeck ordered the driver to step to the rear of the vehicle.  Defendant was the third person to step out of the vehicle.  After defendant exited the vehicle, Zupeck  performed a patdown search and located a hard object in defendant's front right pocket of his pants.  Zupeck believed that the object was possibly a knife.  Based on this belief, he removed the object from defendant's pocket.  Zupeck discovered that the object consisted of a lighter and a clear plastic baggy.  He observed that the plastic baggy contained several small white rocks.  While Zupeck was observing the contents of the plastic baggy, defendant fled.  Thereafter, Zupeck pursued him, and defendant was apprehended approximately one block away with the assistance of other officers.  Once defendant was apprehended, Zupeck arrested him.  

During cross-examination, Zupeck testified that Sergeant Quinn verbally explained the procedure by which to conduct the roadblock.  Zupeck did not know whether the roadblock was publicized.  Zupeck did not issue the driver of the vehicle a ticket; the driver had a valid driver's license when Zupeck checked his name.  He admitted that he did not observe any of the occupants commit any criminal offense, nor did he have any suspicion that they were committing any offense.  He also admitted that none of the occupants gave him any suspicion that they were carrying weapons.  He did not ask the occupants if he could perform a patdown, and defendant did not give Zupeck permission to search him.  

Defendant's first witness was Antoine Taylor.  Taylor testified that he was the driver of the vehicle.  A police officer stopped Taylor and informed him that the stop was a safety stop.  Taylor stated that the officer did not ask him for his license, insurance, and registration but instead asked him to exit the car.  After Taylor exited the car, the officer performed a patdown.  Thereafter, the officer asked the female occupant to exit the car, but he did not search her.  However, the officer did search the remaining occupants once they exited the vehicle.  

Defendant testified that he was a passenger in the vehicle that was stopped.  A police officer asked the driver of the vehicle for his license and proof of insurance.  Thereafter, the officer asked each occupant to exit the car.  When defendant exited the car, the officer searched him, and defendant fled.  On cross-

examination, defendant admitted that he ran from the officer because the officer removed drugs from defendant's pocket.

At the conclusion of the hearing, the trial court denied the motion.  In denying the motion, the court made the following statements:

"Well, the defendant and witnesses testified to some degree differently and the defendant himself indicated that he saw the lights when he was pulled over and asked for a driver's license and insurance and so forth.                       And then he was asked to get out and be searched.  Whereas Taylor indicated he just pulled him over and had him get out.

He also indicated that he had his license.  I don't think the defendant indicated one way or the other as to that.  

The Officer indicates that he did pull them over.  He asked for insurance and license and he did not have a license.  He had insurance.  It was at that point that he had everyone get out of the car.  It seems to be corroborated by the defendant himself and what he said.

So now, he has a driver without a license, according to the officer, although the actual driver said he did have his license.  And it's at this point that he asked people to get out of the car.

Ultimately the officer also said he ran him and didn't show he had a ticket.  He did have a valid license just not on his person.  So he issued no ticket for him.  

I understand at this point he is going to run him and it's going to lead [sic] four people in a car that he has pulled over.  So I can understand that he needs to do the pat-

down.  It's probably less of an inconvenience to pat-down everybody and run the license then [sic] it is just to issue tickets, perhaps arrest him for no valid license.  So I will deny the motion."   

Following the denial of defendant's motion to suppress, on April 25, 1997, the State nol-prossed the unlawful possession of cannabis, unlawful possession of cannabis with intent to deliver, and 
resisting a peace officer charges, and the case proceeded to a bench trial.  On June 18, 1997, the trial court found defendant guilty of unlawful possession of a controlled substance, sentenced him to a five-year extended term, and awarded him credit for time served.  The trial court also recommended the impact incarceration program.  Defendant subsequently filed a timely notice of appeal.  
 Defendant raises one contention on appeal: the trial court erred in denying his motion to suppress because the stop violated  his fourth amendment rights and the search was unreasonable.  He relies on 
People v. Adams
, 293 Ill. App. 3d 180 (1997), as support for the proposition that the roadblock was unconstitutional.  Defendant maintains that the only purpose of the roadblock was to check for valid license, insurance, and registration.  In weighing the objective aspect of the intrusion, he argues that the roadblock caused physical intrusion.  Defendant also argues that the stop was subjectively intrusive because it was not ordered by a politically accountable authority figure; Zupeck was not provided with written guidelines to conduct the roadblock; the roadblock took place on a Saturday evening, which was likely to aggravate anyone subject to the stop; the method employed to stop vehicles was not readily apparent to motorists; those ordered to step outside the vehicle were exposed to fear and concern; and there was no evidence as to the measures taken to inform the public of the stop.  Defendant maintains that less intrusive methods to enforce the license, insurance, and registration requirements could have been employed.      The State replies that the public interest in ensuring that motorists have valid license, insurance, and registration, namely, safety, is more compelling than the public interest in ensuring compliance with the city sticker requirement in 
People v. Adams
, 293 Ill. App. 3d 180 (1997).  It also argues that the objective intrusion to drivers who produced valid license, insurance, and registration was not substantial.  The State asserts that the subjective intrusion was minimal because the roadblock was performed in accordance with established guidelines and the officer exercised limited discretion.  

The fourth amendment to the United States Constitution provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***.”  U.S. Const., amend. IV.  It is well settled that a roadblock constitutes a seizure for purposes of the fourth amendment.  
Michigan Department of State Police v. Sitz
, 496 U.S. 444, 450, 110 L. Ed. 2d 412, 420, 110 S. Ct. 2481, 2485 (1990); 
People v. Bartley
, 109 Ill. 2d 273, 280 (1985).  The standard for determining the constitutionality of a search or seizure is reasonableness.  
People v. McGee
, 268 Ill. App. 3d 32, 40 (1994).  T
o determine whether the seizure was reasonable under the fourth amendment, courts weigh the public interest against the objective and subjective intrusion resulting from the roadblock.  
Bartley
, 109 Ill. 2d at 285.  A trial court's ruling on a motion to suppress evidence will not be overturned on review unless it is manifestly erroneous.  
People v. Galvin
, 127 Ill. 2d 153, 162 (1989).    

Preliminarily, we observe that a passenger in a vehicle has standing to challenge the validity of a stop.  
People v. Crest
, 188 Ill. App. 3d 768, 772 (1989).  We find 
Adams
 instructive.  In 
Adams
, this court considered the constitutionality of a roadblock conducted to enforce a city vehicle sticker requirement.  There, the roadblock was ordered by a sergeant who instructed the officers to stop cars entering the intersection without valid city stickers.  The roadblock was conducted by four uniformed officers who stood on each corner of  the intersection.  In addition to the uniformed officers, marked police vehicles were also in the area.  As vehicles approached the intersection, an officer observed whether the vehicles displayed a valid city sticker.   

We determined that despite the vehicle sticker requirement's legitimate revenue-raising purpose the public interest did not rise to the level of the public safety purpose advanced in sobriety roadblocks.  
Adams
, 293 Ill. App. 3d at 186.  Additionally, although there was not a substantial objective intrusion, the subjective intrusion of the roadblock outweighed the revenue- raising purpose.  
Adams
, 293 Ill. App. 3d at 186-87.  In reaching this conclusion, we considered the following factors: there was no evidence that the roadblock was instituted by a "politically accountable" or "policy-making level" official or that there were preexisting, written guidelines regarding site selection or outlining operating procedures.  
Adams
, 293 Ill. App. 3d at 190.  We also noted that the State failed to demonstrate that the stops were performed in a safe manner, that there was advance publicity  providing notice of the roadblock, and that the roadblock effectively advanced its revenue-raising purpose.  
Adams
, 293 Ill. App. 3d at 190.         

We begin our analysis by considering whether there exists a public interest in allowing the Waukegan police department to stop vehicles at the roadblock.  We agree with the State that valid license, insurance, and registration have a public safety purpose.  While this interest may be more significant than the revenue-

raising purpose of the roadblock conducted in 
Adams
, it is not as compelling as protecting the public welfare against intoxicated motorists.  See 
Bartley
, 109 Ill. 2d at 285 (recognizing that intoxicated motorists pose a substantial threat to public welfare). 

Additionally, the interest must be measured against the objective and subjective aspects of the intrusion.  In weighing the objective nature of the intrusion, courts consider the "length of the stop, the nature of the questioning, and whether a search is conducted."  
Bartley
, 109 Ill. 2d at 282.  In this case, although there was no evidence in the record indicating the length of the stop, the objective intrusion was not significant because motorists could remain in their cars and they were asked to produce documents that are required to be on their person or in their vehicles.  With the exception of the search in this case, there was no evidence in the record suggesting that a search of the other vehicles stopped at the roadblock was conducted.    

In measuring the level of subjective intrusion produced by a roadblock, courts consider whether (1) the decision to institute the roadblock and to select the site is made by supervisory personnel; (2) the method employed to stop the vehicles is preestablished and systematic; (3) the roadblock is operated in accordance with preexisting guidelines; (4) the official nature of the operation is sufficiently apparent, and it is obvious that the roadblock does not in fact pose a safety risk; and (5) the police's intent to establish the roadblock is publicized in advance.  
Bartley
, 109 Ill. 2d at 289-91; 
Adams
, 293 Ill. App. 3d at 185.  

The subjective intrusion of the stop is troubling for several reasons.  The evidence in the record suggests that the roadblock was promulgated by Sergeant Quinn, Zupeck's supervisor, and not by a "politically accountable" or "policy-making level" official.  As in 
Adams
, Zupeck conducted the roadblock pursuant to a verbal order.  The record did not contain any evidence of written guidelines by which the procedure governing the roadblock was conducted or the site of the roadblock was selected.  Absent any evidence of preestablished, written guidelines, there was no apparent limit on the officer's discretion in conducting the roadblock.  It is well settled that roadblocks must not be left to "the unbridled discretion of law enforcement officials."  
Delaware v. Prouse
, 440 U.S. 648, 661, 59 L. Ed. 2d 660, 672, 99 S. Ct. 1391, 1400 (1979).  Moreover, although Zupeck was instructed to stop every fifth vehicle traveling northbound at the intersection of Butrick and Brookside, this method could not have been clear to motorists.  As in 
Adams
, the roadblock likely invoked fear and annoyance among motorists ordered to stop.  Although uniformed officers in police vehicles conducted the roadblock, thereby making motorists aware of its official nature, the record contains no evidence that the roadblock was publicized.  Additionally, similar to 
Adams
, the State failed to proffer any evidence indicating that the roadblock was effective in advancing the public interest in ensuring valid license, insurance, and registration.  The record does contain evidence that roadblocks were performed on a weekly basis.  However, the frequency of the roadblocks does not abrogate the requirement that they must pass constitutional muster.  In addition, as defendant correctly notes, less intrusive methods were available.  For instance, valid insurance checks could be performed by mail, and police officers could ascertain whether a vehicle possessed valid registration simply by driving behind it and electronically verifying the registration, without stopping the vehicle.  In light of the subjectively intrusive nature of the roadblock, we find that it did not constitute a reasonable seizure under the fourth amendment.   

Our conclusion is also consistent with other jurisdictions invalidating roadblocks established to check for license, insurance, and registration.  
State v. Sanchez
, 856 S.W.2d 166 (Tex. Crim. App. 1993) (license and insurance roadblock conducted without authorization of superior officer held invalid under the fourth amendment absent any evidence that roadblock was operated in accordance with established guidelines or that roadblock was effective); 
State v. Larson
, 485 N.W.2d 571 (Minn. Ct. App. 1992) (license roadblock found unconstitutional because state failed to present evidence that supervisory personnel authorized the roadblock or selected its location and that the officers' unbridled discretion was limited); 
State v. Kitchen
, 808 P.2d 1127 (Utah Ct. App. 1991) (notwithstanding important state interest in checking for drunk drivers and advance publicity of license, insurance, and registration roadblock, roadblock found invalid where conducted absent specific guidelines and absent any evidence that roadblock was effective or that it advanced the public interest). 

The roadblock in the instant case runs afoul of the defendant's constitutional rights.  The "unbridled discretion" that the roadblock produced is precisely the type of impermissible intrusion upon defendant's liberties.  Because the roadblock was unconstitutional, the trial court should have suppressed the evidence seized as a result of the roadblock.  Accordingly, the trial court erred in denying defendant's motion to suppress.  We reverse the trial court's order denying defendant's motion to suppress and defendant's conviction of unlawful possession of a controlled substance and remand the cause for further proceedings consistent with this opinion.   

In light of our conclusion that the roadblock was unconstitutional, we need not address the validity of the search.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and RAPP, JJ., concur.