No. 2--99--1288

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, ) 

                                )                   

v. ) No. 97--DT--3462

)

ROBERT S. LIDSTER, ) Honorable

) Mark W. Dwyer,    

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial, defendant, Robert Lidster, was convicted of driving under the influence of alcohol (625 ILCS 5/11--501(a)(2) (West 1998)).  Defendant was arrested after being stopped at an "informational roadblock" conducted by the Lombard police department.  He appeals, contending that the trial court erred in denying his motion to quash his arrest and suppress evidence because the roadblock was an unreasonable seizure.

On August 30, 1997, Lombard police set up an "informative stop" on North Avenue, at the location of a hit-and-run accident a week before.  The officers intended to stop all eastbound traffic and pass out flyers about the accident, hoping that someone had witnessed the incident and could provide information about the offender or his vehicle.

While conducting the roadblock, Detective Wayne Vasil was standing in the center lane of North Avenue.  As each vehicle pulled up, an officer would hand the driver a flyer about the accident.  One such vehicle was defendant's Mazda minivan, which almost struck Vasil as defendant approached.  At that point, Vasil was not aware that defendant had violated any state law or city ordinance, although he had "some sort of feeling that something might be wrong."  Vasil stated that defendant's van had already been stopped pursuant to the roadblock before nearly striking him.

Vasil approached the van to ask defendant why he had almost hit him.  During the ensuing conversation, Vasil began to suspect that defendant might be under the influence of alcohol.  As a result, he directed defendant to pull onto a side street for field sobriety tests.  Another officer conducted the tests and defendant was arrested for driving under the influence of alcohol.

Defendant moved to quash his arrest, arguing that the roadblock was unconstitutional.  The trial court denied the motion.  Subsequently, a jury found defendant guilty and the court sentenced him to court supervision.  After the court denied his posttrial motion, defendant filed a timely notice of appeal.

On appeal, defendant renews his argument that the roadblock was unconstitutional.  He contends that, under the balancing test developed by the state and federal courts, the public interest in conducting the roadblock--searching for evidence about a prior crime--did not outweigh the intrusion on the rights of innocent motorists.

A fourth amendment seizure occurs when a vehicle is stopped at a checkpoint.  
Michigan Department of State Police v. Sitz
, 496 U.S. 444, 450, 110 L. Ed. 2d 412, 420, 110 S. Ct. 2481, 2485 (1990); 
People v. Fullwiley
, 304 Ill. App. 3d 44, 49 (1999).  Whether a particular roadblock or similar device violates the fourth amendment is a question of reasonableness.  
People v. Bartley
, 109 Ill. 2d 273, 280 (1985).  The test courts have developed to assess the reasonableness of a procedure involves balancing the intrusion on an individual's fourth amendment interests against the program's promotion of legitimate government interests.  
Delaware v. Prouse
, 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396 (1979).  This in turn requires the court to weigh the gravity of the public concerns served by the seizure and the degree to which the seizure advances those  interests against the severity of the interference with individual liberty.  
Brown v. Texas
, 443 U.S. 47, 50-51, 61 L. Ed. 2d 357, 361-62, 99 S. Ct. 2637, 2640 (1979); 
Bartley
, 109 Ill. 2d at 280.

After the parties filed their briefs, the United States Supreme Court decided 
City of Indianapolis v. Edmond
, 531 U.S. ___, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000).  There, citizens sought to enjoin the city's use of roadblocks to search for evidence of drug trafficking.  The court found the roadblock program unconstitutional because its sole purpose was to uncover evidence of "ordinary criminal wrongdoing." 
 
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 343, 121 S. Ct. at 454.  Noting that its roadblock cases had recognized only a limited exception to the rule that a seizure must be accompanied by some measure of individualized suspicion, the 
Edmond
 majority observed that the roadblocks the Court had previously approved were designed to further a compelling purpose such as promoting highway safety by targeting drunk drivers (see 
Sitz
, 496 U.S. at 455, 110 L. Ed. 2d at 423, 110 S. Ct. at 2488) or policing the border to stanch the flow of illegal aliens (see 
United States v. Martinez-Fuerte
, 428 U.S. 543, 551-52, 49 L. Ed. 2d 1116, 1124-25, 96 S. Ct. 3074, 3080 (1976)). 
 
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 341-42, 121 S. Ct. at 452-53.  However, the Court declined "to suspend the usual requirement of individualized suspicion where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes."  
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 345, 121 S. Ct. at 455.

Although the roadblock in this case is in some ways different from the one at issue in 
Edmond
, it is impossible to escape the conclusion that the roadblock's ostensible purpose was to seek evidence of "ordinary criminal wrongdoing."  Vasil testified that the roadblock was set up in the hope of obtaining more information about a driver responsible for killing a bicyclist a week earlier.  The police stopped cars near the site of the accident and at about the same time of day the accident occurred in the hope that someone who left work at that time or otherwise traveled that route regularly might have seen the accident.  The express purpose of the roadblock was to search for evidence of a crime.

Edmond
 did leave open the possibility that an "emergency" might justify a checkpoint the purpose of which would ordinarily be considered routine crime control.  The Court gave as examples preventing an imminent terrorist attack and catching a dangerous criminal "who is likely to flee by way of a particular route."  
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 345, 121 S. Ct. at 455.  Clearly, no such emergency was present here.  The crime in question had occurred a week before.  Moreover, the officers did not testify that they expected even to catch the offender; they merely wanted to get a more accurate description of him.  This is the type of routine investigative work that the police must do every day and does not justify the extraordinary means chosen to further the investigation.

One apparent concern of the Court in 
Edmond
 was that, if "the ordinary enterprise of investigating crimes" (
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 345, 121 S. Ct. at 455)) could be the basis for a checkpoint, there would be no theoretical limit on when such tactics could be employed and the requirement of individualized suspicion would be nullified. 
 While the crime under investigation here, involving the death of an innocent person, is undoubtedly serious, equally serious crimes unfortunately happen every day in many jurisdictions.  If investigating such a crime could be the basis for a roadblock, police could stop all cars entering or leaving town virtually every day on the chance that someone might have seen something that would aid the investigation.

Such unbridled use of checkpoints also leaves open the possibility of police subterfuge, using the pretense of investigating some infamous crime to stop motorists based on "the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime."  
Edmond
, 531 U.S. at ___, 148 L. Ed. 2d at 345, 121 S. Ct. at 455.  We note that in this case a second officer was stationed on a side street, apparently to prevent drivers from evading the roadblock.  This tends to discredit the explanation that the police were merely seeking information.  Presumably, if a motorist were willing to provide information to the police, he or she would not attempt to avoid the roadblock.

The State argues that the public interest in seeing the hit-and-run solved was not insubstantial and that the police took reasonable steps to minimize the intrusion on the motorists' rights.  However, assuming for the sake of argument that the police did everything reasonably possible to minimize the intrusion, 
Edmond
 strongly suggests that a criminal investigation can never be the basis for a roadblock, at least absent some emergency circumstance not present here.  Such an interest is simply not sufficiently weighty to counterbalance even a minimal intrusion on the rights of drivers stopped at the checkpoint.

Finally, although not itself dispositive, some mention should be made of the third element of the balancing equation, the degree to which the seizure advances the public interest.  The Supreme Court has required that the facts on which such an intrusion is based must "be capable of measurement against 'an objective standard.' " 
Prouse
, 440 U.S. at 654, 59 L. Ed. 2d at 668, 99 S. Ct. at 1396.  Generally, the choice among reasonable enforcement alternatives must be left with local governmental officials " 'who have a unique understanding of, and a responsibility for, limited public resources.' " 
People v. Adams
, 293 Ill. App. 3d 180, 189 (1997), quoting 
Sitz
, 496 U.S. at 453-54, 110 L. Ed. 2d at 422, 110 S. Ct. at 2487.  However, this does not mean that the courts must 

" 'blindly defer to whatever enforcement techniques are chosen by officials' " because courts must analyze these techniques to ensure that they are, in fact, reasonable in the context of the fourth amendment.  
Adams
, 293 Ill. App. 3d at 189-90, quoting 
Holt v. State
, 887 S.W.2d 16, 19 (Tex. Crim. App. 1994).  Here, the State presented no empirical evidence of the effectiveness of such a checkpoint program.  In the absence of evidence to the contrary, it seems likely that more traditional law enforcement techniques would have been just as, if not more, effective than the roadblock without infringing on the constitutional rights of numerous motorists, none of whom was suspected of a crime.

Because the roadblock at which defendant was apprehended did not comply with constitutional standards, the trial court should have granted defendant's motion to quash his arrest and suppress evidence.  Absent this evidence, there remains no evidence to support his conviction for driving under the influence of alcohol.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

GEIGER and BOWMAN, JJ., concur.